**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

**PKCV, L.L.C.**

**PLAINTIFF,**

vs.                                    **CIVIL ACTION NO.
                                       JUDGE**_____

**CERTAIN UNDERWRITERS AT LLOYDS, LONDON SUBCRIBING TO POLICY NUMBER RKH1700060**

**DEFENDANT.**

## PLAINTIFF'S ORIGINAL COMPLAINT
## JURY TRIAL DEMANDED

**COMES NOW, PKCV, L.L.C.** (hereinafter, referred to as Plaintiff), and files this, its **Original Complaint**, and for causes of action against CERTAIN UNDERWRITERS AT LLOYDS, LONDON SUBCRIBING TO POLICY NUMBER RKH1700060 ("CERTAIN UNDERWRITERS") (hereinafter, referred to as "Defendant"), would show unto the Court and the jury the following:

## PARTIES AND SERVICE OF PROCESS

1. Plaintiff **PKCV, LLC** owns the properties located at 3314 Sadler Street, Houston, Texas 77093 and 3317 Persimmon Street, Houston, Texas 77093 that are the subjects of this lawsuit and are situated in Harris County, Texas.

2. Defendant, CERTAIN UNDERWRITERS SUBCRIBING TO POLICY NUMBER RKH1700060 is an insuring entity eligible to conduct the business of insurance in Texas under Texas Insurance Code Chapter 981. The insurance policy issued to Plaintiff is underwritten by syndicate numbers 1200, 1206, 2001, 2003, 5000, 2623, and 0382. Service upon any underwriter serves as service on all underwriters. Certain

1

Underwriters of Lloyd's, London are citizens of the United Kingdom and their principal place of business is the United Kingdom. Certain Underwriters of Lloyd's, London are citizens of the United Kingdom and their principal place of business is the United Kingdom. This Defendant may be served with personal service by a process server, by serving its Attorney for Service, Mendes & Mount, 750 Seventh Avenue, New York, New York 10016.

## STATUTORY AUTHORITY

3.     This suit also brought in part, under the Texas Insurance Code, Sections 541.051 *et seq.,* 541.151 *et seq.*, 542.051 *et se.,* and Tex. Civ. & Rem. Code Section 38.01 *et seq.*

## JURISDICTION

4.     This Honorable Court maintains subject matter jurisdiction over this matter, pursuant to 28 U.S.C. § 1332, based on complete diversity of citizenship between the parties. The amount in controversy exceeds the minimum jurisdictional limits.

## VENUE

5.     This Honorable Court maintains venue under 28 U.S.C. § 1391(b)(2), being the judicial district of the location of the properties that is the subject of this action.

## NOTICE AND CONDITIONS PRECEDENT

6.     Defendant has been provided written notice of the claims made by Plaintiff in this complaint, including a statement of Plaintiff's actual damages and expenses in the manner and form required by Tex. Ins. Code § 542A.003.

7.     All conditions precedent necessary to maintain this action and in order to maintain claim under the insurance policy in question have been performed, occurred, or have been waived by Defendant.

**FACTS**

8. This lawsuit arises out of the following transactions, acts, omissions, and/or events. Hurricane Harvey struck South Texas on August 25, 2017 over several days and caused catastrophic damage throughout the region. On or about September 1, 2017, Plaintiff's properties sustained damages as a result of Hurricane Harvey winds over multiple consecutive days.

9. Plaintiff submitted a claim to Defendant, CERTAIN UNDERWRITERS, pursuant to the contract of insurance, for damages to the properties as a result of Hurricane Harvey and asked Defendant CERTAIN UNDERWRITERS to honor its contractual obligations and cover the cost of repairs to the properties.

10. Defendant, CERTAIN UNDERWRITERS, accepted the Plaintiff's claim and assigned a claim number of C17383746.

11. Plaintiff then hired Stevephen Lott of Integrity Claims Services, LLC to inspect the properties for damages from Hurricane Harvey, properly investigate and evaluate the claim and communicate with Defendant and its representatives regarding the claim.

12. Defendant, CERTAIN UNDERWRITERS assigned a third-party claims administrator, Gulf Coast Claim Service, to inspect, investigate and evaluate the claim, assess the damages to the properties, and communicate with the Plaintiff as to coverage under the policy.

13. Gulf Coast Claim Service, on behalf of Defendant, CERTAIN UNDERWRITERS assigned Mike Orazi to investigate and evaluate the claim and communicate with the Plaintiff as to coverage under the policy. The claim was then

reassigned to Johnny Michalek to investigate and evaluate the claim and communicate with the Plaintiff as to coverage under the policy.

14. Gulf Coast Claim Service and/or Johnny Michalek, on behalf of Defendant CERTAIN UNDERWRITERS assigned Doug Severson to inspect, investigate and evaluate the claim, assess the damages to the properties.

15. Doug Severson performed an inspection of the subject insured properties with Stevephen Lott present.

16. On or about December 20, 2017, Johnny Michalek of Gulf Coast Claims Service sent a letter to Plaintiff stating Mr. Severson had inspected the buildings and confirmed wind and related interior water damage to various buildings and it also denied some of the damages due to wear and tear. Estimates were attached that misrepresented and undervalued the covered damages to Plaintiff's properties.

17. The estimates totaled the replacement cost value of $37,865.71.

18. After a reinspection, a second estimate was later provided to Plaintiff from Gulf Coast Claims Service dated January 17, 2018. The revised replacement cost estimate totaled $42,297.43 , which undervalued and misrepresented the covered damages to your insured's properties.

19. Even though the properties had sustained extensive damages from the storm, Severson ignored wind created damages to the properties.  Severson completed a results oriented, unreasonable inspection, failed to document all the covered wind damages to the properties, ignored facts supporting coverage and improperly denied Plaintiff's damages.

20. Plaintiff did not agree with Mr. Severson's assessment of the damages to it's properties.

21. Stevephen Lott determined that Plaintiff's properties damages were grossly undervalued by Mr. Severson and CERTAIN UNDERWRITERS. After inspecting the properties, Mr. Lott determined that there was wind damage to the roof requiring its replacement, and water damage that entered through wind created openings.

22. Plaintiff contacted CERTAIN UNDERWRITERS to discuss their disagreement with the coverage determination made by Severson.

23. Plaintiff then retained Richard Clarke of Risk Protection Services to inspect the properties and assist in determining the extent of damage to the properties. Mr. Clarke inspected the properties and provided replacement cost estimates of damages based his inspection of the properties in the amounts of $607,709.27 for the 3317 Persimmon Street property and $614,867.64 for the 3314 Sadler Street property.

24. Defendant, CERTAIN UNDERWRITERS relied upon Mr. Severson's inaccurate and unreasonable report to deny the Plaintiff's damages. Furthermore, Defendant, CERTAIN UNDERWRITERS failed to accept or deny coverage for the remaining damages in writing within the statutory deadline.

25. Based on the improper, inadequate, and incomplete investigation of CERTAIN UNDERWRITERS, and its representatives, the Plaintiff's damages were only estimated at $42,297.43 for building damage.

26. Defendant, CERTAIN UNDERWRITERS ignored the information provided by the Plaintiff and its public adjuster. Instead, Defendant, CERTAIN UNDERWRITERS chose simply to only rely on the portions of its adjuster's, consultant's, and vendors' reports which supported the results-oriented investigation and coverage decisions supporting denial of Plaintiff's claim.

27. Defendant, CERTAIN UNDERWRITERS failed to perform its contractual obligation to compensate Plaintiff under the terms of the Policy.

## CAUSES OF ACTION AGAINST DEFENDANT, CERTAIN UNDERWRITERS - COUNT I - BREACH OF CONTRACT

28. Each of the foregoing paragraphs is incorporated by reference in the following.

29. Plaintiff and Defendant CERTAIN UNDERWRITERS executed a valid and enforceable written insurance contract providing insurance coverage to the insured location at.  The policy provides coverage for the peril of wind, hurricane and rain, such as those sustained during Hurricane Harvey, among other perils.

30. All damages and loss to the Plaintiff's properties were caused by the direct result of a peril for which Defendant CERTAIN UNDERWRITERS insured the Plaintiff, pursuant to the policy herein, specifically, the perils of hurricane, wind, and rain.

31. Defendant, CERTAIN UNDERWRITERS sold the subject insurance policy to Plaintiff insuring the subject insured properties in its "as is" condition.

32. Plaintiff suffered a significant loss with respect to the properties at issue and additional expenses as a result of the high winds and rain that occurred during Hurricane Harvey.

33. Plaintiff submitted a claim to Defendant, CERTAIN UNDERWRITERS pursuant to the contract of insurance for damages as a result of high winds and rain that occurred during Hurricane Harvey.

34. Plaintiff provided Defendant, CERTAIN UNDERWRITERS, with proper notice of damage to the exterior and interior of the subject insured properties.

35. Defendant, CERTAIN UNDERWRITERS ignored the information provided by the public adjuster and other information provided by Plaintiff that supported coverage of Plaintiff's damage and chose to rely solely on its own consultants.

36. CERTAIN UNDERWRITERS by and through its adjusters and representatives have failed to properly evaluate the damages resulting from the covered cause of loss.

37. CERTAIN UNDERWRITERS by and through its adjusters and representatives failed to retain the appropriate experts and/or consultants to evaluate the hurricane winds and water damages to the subject properties.

38. As of this date, CERTAIN UNDERWRITERS by and through its adjusters and representatives have failed to pay for the hurricane winds and water damages to Plaintiff's properties.

39. Plaintiff has attempted on numerous occasions to obtain full and complete payment for covered losses pursuant to the insurance policy.

40. Defendant, CERTAIN UNDERWRITERS, acting through its agents, servants, representatives and employees has failed to properly investigate, evaluate and adjust Plaintiff's claim for benefits in good faith and has further failed to deal fairly with Plaintiff.

41. Defendant, CERTAIN UNDERWRITERS has failed and refused to evaluate the information and surrounding facts regarding Plaintiff's covered claim, choosing instead to hide behind palpably incorrect assumptions and conclusions of its agents, employees or consultants.

42. As of this date Defendant, CERTAIN UNDERWRITERS continues to be in breach of the contract.

43. CERTAIN UNDERWRITERS ignored the information provided by Plaintiff and its public adjuster during the handling of the claim and did not make any payment to indemnify Plaintiff for the full amount of the covered damages.

44. CERTAIN UNDERWRITERS failed to make any payment after receipt of the additional information from Plaintiff and its public adjuster.

45. The mishandling of Plaintiff's claim caused a delay in Plaintiff's ability to fully repair the Properties, resulting in additional damages.

## COUNT II - VIOLATIONS OF THE TEXAS UNFAIR OR DECEPTIVE PRACTICES ACT

46. Each of the foregoing paragraphs is incorporated by reference in the following.

47. Defendant CERTAIN UNDERWRITERS is an entity that is required to comply with Tex. Ins. Code Sections 541.051; 541.060; 541.061; and 541.151. Defendant's conduct constitutes multiple violations of the Texas Unfair or Deceptive Practices Act.

1. Misrepresenting a material fact or policy provision relating to coverage at issue;

    a. Making an untrue statement of material fact. CERTAIN UNDERWRITERS through its agents, employees, or consultants prepared an estimate of damages that was misleading as to the value of damages to the subject properties stating the total damages were $42,297.43.

b. Failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made. CERTAIN UNDERWRITERS through its agents, employees, or consultants failed to advise Plaintiff that it failed to perform proper testing of the buildings and properties in order to more accurately investigate and evaluate the damages resulting from the covered perils of hurricane, wind and rain.

c. Making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact. CERTAIN UNDERWRITERS through its agents, employees, or consultants advised Plaintiff and its public adjuster that it had investigated and evaluated the damages to the subject properties resulting from the September 1, 2017 hurricane and concluded its coverage determination, thereby misleading the Plaintiff to conclude that a proper and complete investigation had been performed.

2. Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear. CERTAIN UNDERWRITERS failed to consider reports provided by Plaintiff's and failed to utilize information in the reports that would support coverage of Plaintiff's damages.

3. Failing to promptly provide a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of

a claim. To date, Defendant has failed to provide a reasonable explanation of the basis of its denial of coverage for all of Plaintiff's damages.

4. Refusing to pay a claim without conducting a reasonable investigation with respect to the claim. CERTAIN UNDERWRITERS through its agents, employees, or consultants failed to request its employees, agents, or consultants to perform proper testing of the buildings at the subject insured properties in order to properly evaluate the extent and value of damages resulting from the Hurricane Harvey event of September 1, 2017.

48. Defendant's unfair settlement practice in failing to conduct a proper and thorough evaluation, failing to perform adequate testing of the buildings to more accurately investigate and evaluate the damages, failing to advise Plaintiff that it had not performed proper testing of the buildings and had not properly investigated and evaluated the damages, and preparing both a misleading and inaccurate damage estimate resulted in Defendant's failure to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claims, even though Defendant's liability under the policy was reasonably clear, and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code Sections 541.051, 541.060 and 541.061.

## COUNT III – VIOLATIONS OF THE PROMPT PAYMENT OF CLAIMS ACT

49. Each of the foregoing paragraphs is incorporated by reference here fully.

50. Defendant's conduct constitutes multiple violations of the Texas Prompt Payment of Claims Act - Tex. Ins. Code Chapter 542. All violations made under this article are made actionable by Tex. Ins. Code Section 542.060.

10

51. Specifically, Defendant failed to accept or reject Plaintiff's claim within the time period or notify the Plaintiff why it needed more time, as required by Tex. Ins. Code 542.056.

52. Defendant failed to timely conduct a proper investigation of the damages to the subject properties resulting from a covered peril. resulting in a delay of payment of adequate insurance benefits as contracted under the insurance policy between the parties.

53. Defendant's failure to give adequate consideration to the information provided by Plaintiff's public adjuster, which made liability reasonably clear, resulted in additional delay of payment of the claim after having sufficient information to make payment for such claim.

54. CERTAIN UNDERWRITERS ignored the information provided by Plaintiff and Plaintiff's public adjuster during the handling of the claim and did not make a payment.

55. CERTAIN UNDERWRITERS, upon receipt of the Richard Clarke estimate from Plaintiff, had sufficient information to make full payment to Plaintiff for the damages, but as of this date has failed to do so.

## COUNT IV - BREACH OF COMMON LAW DUTY OF GOOD FAITH AND FAIR DEALING

56. Each of the foregoing paragraphs is incorporated by reference here fully.

57. Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to its insured pursuant to the insurance contract and in direct contradiction of the applicable industry standards of good faith and fair dealing.

58. Defendant failed to conduct a proper and thorough evaluation, failing to perform adequate testing of the buildings to more accurately investigate and evaluate the

damages, failing to advise Plaintiff that it had not performed proper testing of the buildings and had not properly investigated and evaluated the damages, and preparing both a misleading and inaccurate damage estimate.

59. Defendant's failure, as described above, to adequately and reasonably investigate, evaluate, and pay the benefits owed under the insurance contract, knowing full well through the exercise of reasonable diligence that its liability was reasonably clear, resulted in a breach of the duty of good faith and fair dealing.

60. CERTAIN UNDERWRITERS ignored the information provided by Plaintiff's public adjuster during the handling of the claim and did not make any payment.

61. CERTAIN UNDERWRITERS failed to make any payment after receipt of the additional information from the public adjuster and Richard Clarke, when CERTAIN UNDERWRITERS knew or should have known liability was reasonably clear.

## COUNT V – VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

62. Each of the foregoing paragraphs is incorporated by reference here fully.

63. At all material times herein, Plaintiff were "consumers" who purchased insurance products and services from Defendant, CERTAIN UNDERWRITERS and the products and services form the basis of this action.

64. Defendant CERTAIN UNDERWRITERS has violated the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA") in at least the following respects:

   a. By accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing, engaged in an unconscionable action or course of action prohibited by DTPA § 17.50(a)(1)(3) in that Defendant CERTAIN UNDERWRITERS

    took advantage of Plaintiff's lack of knowledge, ability, experience, and capacity to a grossly unfair degree, resulting in a gross disparity between the consideration paid in the transaction and the value received, all in violation of Chapters 541 and 542 of the Texas Insurance Code;

  b. Generally engaging in unconscionable courses of action while handling the claim; and/or

  c. Violating the provisions of the Texas Insurance Code, as further described elsewhere herein.

## KNOWLEDGE AND INTENT

65. Each of the acts described above, together and singularly, was done "knowingly" and "intentionally" and was a producing cause of Plaintiff's damages described herein.

## DAMAGES AND PRAYER

66. **WHEREFORE, PREMISES CONSIDERED**, Plaintiff herein, complains of Defendant CERTAIN UNDERWRITERS's acts and omissions and pray that, Defendant be cited to appear and answer and that upon a final trial on the merits, Plaintiff recover from Defendant the following:

67. Plaintiff would show that the aforementioned acts, taken together or singularly, constitute the proximate and/or producing causes of damages sustained by Plaintiff.

68. For breach of contract by Defendant, CERTAIN UNDERWRITERS, Plaintiff is entitled to regain the benefit of its bargain, which is the amount of the claims, together with attorney's fees, pursuant to Tex. Civ. & Rem. Code Sec. 38.001 *et seq*.

69. For noncompliance with the Texas Unfair or Deceptive Practices Act by Defendant, CERTAIN UNDERWRITERS, Plaintiff is entitled to actual damages, which includes the loss of the benefits that should have been paid pursuant to the policy,

including but not limited to direct and indirect consequential damages, mental anguish, court costs and attorney's fees. For knowing conduct of the acts complained of, Plaintiff asks **for three (3) times** its actual damages, pursuant to Tex. Ins. Code Ann. Section 541.152 *et seq*.

70. For noncompliance with the Texas Prompt Payment of Claims Act by Defendant, CERTAIN UNDERWRITERS, Plaintiff is entitled to the amount of its claim, as well as ten (10) percent interest per annum post judgment interest, together with reasonable and necessary attorney's fees, as allowed by law, and for any other further relief, either at law or in equity, to which it may show itself to be justly entitled, pursuant to Tex. Ins. Code Sec. 542.058 *et seq*. and 542.060 *et seq*.

71. For violations of the common law duty of good faith and fair dealing by Defendant, CERTAIN UNDERWRITERS, Plaintiff is entitled to actual damages, direct and indirect consequential damages, mental anguish, and exemplary damages.

72. For noncompliance with the Texas Deceptive Trade Practices Act ("DTPA") by Defendant, CERTAIN UNDERWRITERS, Plaintiff is entitled to actual damages, which includes the loss of the benefits that should have been paid pursuant to the policy, including but not limited to direct and indirect consequential damages and mental anguish damages, court costs and attorney's fees. For knowing conduct of the acts complained of, Plaintiff ask for **three (3) times** its damages, pursuant to the DTPA and Tex. Ins. Code Ann. Section 541.152 *et seq*.

## JURY DEMAND

73. Plaintiff respectfully demands a **trial by jury**.

SIGNATURE BLOCK ON NEXT PAGE

Respectfully submitted,

**PANDIT LAW FIRM, L.L.C.**

BY: /s/ *Phillip N. Sanov*
**PHILLIP N. SANOV,**
**State of Texas Bar No. 17635950**
**Fed. Adm. No. 1148342**
**CARLA R. DELPIT,**
**State of Texas Bar No. 24082183**
**Fed. Adm. No. 2248226**
**One Galleria Tower**
**2700 Post Oak Blvd., 21st Floor**
**Houston, Texas 77056**
**Telephone:   (832) 583-5663**
**Facsimile:    (504) 313-3820**
**Email: psanov@panditlaw.com**
         **cdelpit@panditlaw.com**

**ATTORNEYS FOR PLAINTIFF**
**PKCV, L.L.C.**